## STATE OF CONNECTICUT *v.* JOHN RAGIN
## (AC 27341)

Bishop, DiPentima and Harper, Js.

Argued January 18—officially released March 18, 2008

---

*Kent Drager*, senior assistant public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Tiffany M. Lockshier*, assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, John Ragin, appeals from the judgment of conviction, rendered after a trial to the court, of interfering with an officer in violation of General Statutes § 53a-167a and breach of the peace in the second degree in violation of General Statutes § 53a-181. On appeal, the defendant claims that the evidence was insufficient to support his conviction. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. In the early morning of August 6, 2004, Officer Sean Wonwong was on duty in his police cruiser in the parking lot of 50 Washington Street in Norwalk. He was there to provide a police presence during bar closing time. While he watched, a crowd of thirty to forty people gathered and started moving quickly toward a nearby alleyway. Wonwong alerted police headquarters of a possible fight and then entered the crowd and tried to separate three fighting women who were being encouraged by the crowd with chants of, "fight, fight, fight!" At this point, Officers William Vetare and Jason Scanlon arrived at the chaotic scene. Knowing that Wonwong was in the melee alone, but unable to see him, both officers entered the crowd with the primary objectives

of ensuring Wonwong's safety and dispersing the crowd. Upon finding Wonwong, Vetare used his baton to push away one of the women who was trying to climb over Wonwong's back to continue the fight with the other women. Meanwhile, Scanlon was shouting at people to leave. When the defendant, who was standing near the fighting women, approached Vetare, Vetare pushed him back with his baton. The defendant came back at Vetare in an aggressive manner with his fists clenched, shoulders back and chest out. As the defendant did not disperse when pushed and Vetare believed that he was in danger, he struck the defendant on the back of the legs two times. Once again, the defendant came back at Vetare. Seeing this, Scanlon fired his Taser gun at the defendant. Thereafter, the officers were able to handcuff the defendant without further incident. Some of the members of the crowd dispersed but others remained and started yelling racial epithets and slurs at the officers. Eventually, the officers left.

After a trial to the court, the defendant was found guilty on both counts. The court sentenced the defendant on the conviction of interfering with an officer to six months incarceration, execution suspended, and eighteen months probation. In addition, the court sentenced the defendant on his breach of the peace conviction to three months of imprisonment, execution suspended, and a concurrent term of eighteen months of probation.[1] This appeal followed.

---

[1] We note that although the defendant has apparently fulfilled his sentence, his appeal is not moot. "[C]ompletion of the sentence does not render the defendant's appeal moot because the defendant may be subject to collateral legal consequences as a result of the conviction. See *Sibron* v. *New York*, 392 U.S. 40, 53–55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); see also *Barlow* v. *Lopes*, 201 Conn. 103, 112, 513 A.2d 132 (1986) ('[i]t is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served'); *State* v. *Falcon*, 84 Conn. App. 429, 431 n.3, 853 A.2d 607 (2004) (same); see also *State* v. *Scott*, 83 Conn. App. 724, 727, 851 A.2d 353 (2004) (same)." *State* v. *Briggs*, 94 Conn. App. 722, 725 n.4, 894 A.2d 1008, cert. denied, 278 Conn. 912, 899 A.2d 39 (2006).

The defendant claims on appeal that the evidence presented by the state was insufficient to support his conviction of interfering with an officer and breach of the peace.[2] "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the [finder of fact] must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [finder of fact] to conclude that a basic fact or an inferred fact is true, the [finder of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . .

---

[2] We note that despite the defendant's failure to preserve his claims by filing a motion for a judgment of acquittal, we will review them. "[A]ny defendant found guilty on the basis of insufficient evidence has been deprived of a constitutional right, and would therefore necessarily meet the four prongs of [*State* v. *Golding*, 213 Conn. 239–40, 567 A.2d 823 (1989)]. . . . [N]o practical reason exists to engage in a *Golding* analysis of a sufficiency of the evidence claim . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Singleton*, 97 Conn. App. 679, 684 n.7, 905 A.2d 725, cert. granted on other grounds, 280 Conn. 949, 912 A.2d 484 (2006).

It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence that it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Davis*, 283 Conn. 280, 329–30, 929 A.2d 278 (2007).

I

We first analyze the sufficiency of the evidence in support of the defendant's conviction of interfering with an officer. The defendant claims that the state failed to prove that an officer ever ordered the defendant to leave, and, therefore, the defendant could not have violated § 53a-167a because he was lawfully standing in a public area. The defendant also argues that his behavior did not amount to interfering and that his conviction rests on his failure to fall when struck. Furthermore, he claims that because his intention was to break up the fight, not interfere with the officers, he lacked the specific intent for culpability under § 53a-167a. We are unpersuaded.

In order to support a conviction for interfering with an officer, the state must prove beyond a reasonable doubt that the defendant obstructed, resisted, hindered or endangered an officer in the performance of his or her duties. General Statutes § 53a-167a. Additionally, the state must prove that the defendant had the specific intent to interfere with an officer. *State* v. *Nita*, 27 Conn. App. 103, 111–12, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992). The language of § 53a-167a is intended to be broad. "By using those words it is apparent that the legislature intended [§ 53a-167a] to prohibit *any* act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . The [defendant's] act, however, does not have to be wholly or partially successful . . . [nor must it] be such as to defeat or delay the performance of a duty in which the officer is then engaged. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended to thwart that purpose is violative of the statute. . . . Thus, [t]he broad intent of § 53a-167a is to prohibit conduct that hampers the activities of the police in the performance of their duties . . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 833, 911 A.2d 1086 (2007).

The defendant argues that he did not hear the officers ordering people to disperse and, therefore, could not have had the requisite intent to interfere. His argument ignores the evidence that he was given a clear, nonverbal order to get back when Vetare pushed him with the baton. Additionally, even if we accept the defendant's claim that he did not know that the police officers were trying to disperse the crowd at first, the moment he "came back" at them after being pushed away with

Vetare's baton, his conduct was evidence of his intent to interfere with their duty to disperse the unruly crowd.[3]

Contrary to the defendant's claim that the officers hit him for no reason, Vetare testified that the defendant came at him aggressively on three separate occasions, forcing him to divert his attention from securing Wonwong's safety and dispersing the crowd. Scanlon corroborated Vetare's testimony. "In conducting our review, we are mindful that the finding of facts, the gauging of witness credibility and the choosing among competing inferences are functions within the exclusive province of the [finder of fact], and, therefore, we must afford those determinations great deference." (Internal quotation marks omitted.) *State* v. *Nelson*, 105 Conn. App. 393, 399, 937 A.2d 1249 (2008). For the foregoing reasons, the court reasonably could have concluded that the defendant intended to hinder, delay or impede the police.

## II

The defendant also claims that the evidence was insufficient to support his conviction of breach of the peace in the second degree. Pursuant to § 53a-181, the state must prove that (1) the defendant engaged in fighting or in violent, tumultuous or threatening behavior, (2) this conduct occurred in a public place and (3) the defendant acted with the intent to cause inconvenience, annoyance or alarm, or that he recklessly created a risk thereof. See also *In re Jeremy M.*, 100 Conn.

---

[3] "It is well established that the question of intent is purely a question of fact [and] may be . . . inferred from the defendant's verbal or physical conduct [or] from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Salaman*, 97 Conn. App. 670, 677, 905 A.2d 739, cert. denied, 280 Conn. 942, 912 A.2d 478 (2006).

App. 436, 447, 918 A.2d 944, cert. denied, 282 Conn. 927, 926 A.2d 666 (2007).

The incident in the present case occurred against the backdrop of a frenzied crowd. Vetare testified that the defendant came at him three times and assumed an aggressive stance with clenched fists, shoulders back and chest out. If credited, this testimony reveals that the defendant's actions caused the officers to fear physical violence and to take more drastic measures in order to subdue him. As the trier of fact, the court was entitled to credit this testimony. After reviewing the evidence in the light most favorable to sustaining the court's judgment, we conclude that the court reasonably could have found that the defendant intentionally breached the peace by engaging in threatening behavior.

The judgment is affirmed.

In this opinion the other judges concurred.