# STATE OF CONNECTICUT *v.* COREY WILLIAMS
## (AC 27628)

Flynn, C. J., and Beach and Dupont, Js.

Argued June 2—officially released October 14, 2008

*David B. Rozwaski*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Suzanne M. Vieux*, assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Corey Williams, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in

violation of General Statutes § 21a-277 (a) and interfering with an officer in violation of General Statutes § 53a-167a.[1] The defendant claims that the evidence adduced at trial was insufficient to support his conviction.[2] We disagree. Accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the early morning hours of October 19, 2004, Russell Fallow, a sergeant with the Norwalk police department, was driving a police car and patrolling the buildings on Westport Avenue, near Lois Street, in Norwalk. At approximately 2 a.m., he observed a set of taillights of a car on Lois Street in the vicinity of the Alden O. Sherman Company building, which he knew was not open at that hour. Because this particular company had reported problems with property damage, trespassing and the presence of narcotics transactions in its parking area, Fallow drove toward the vehicle to investigate further. Fallow then observed another vehicle in the parking area of the company. Fallow ended his pursuit of the first vehicle and made his way toward the second vehicle. As he approached the second vehicle, it began to exit the parking area. Fallow blocked the car from exiting with his cruiser in order to conduct a motor vehicle stop.

Once the car came to a stop, Fallow put his spotlight on the vehicle and approached the driver to request his driver's license, motor vehicle registration and an insurance card. He saw a male in the front passenger

---

[1] The jury found the defendant not guilty of possession of marijuana in violation of General Statutes § 21a-279 (c). Because the defendant was not found guilty of this offense, we are not concerned with whether it was a lesser offense included within § 21a-277 (a) or with any issue involving the defendant's constitutional protection against double jeopardy. Cf. *State* v. *Mullins*, 288 Conn. 345, 378–79, 952 A.2d 784 (2008).

[2] The state concedes that the claims were preserved by the defendant's motion for a judgment of acquittal made at the close of the state's case.

seat and another male, the defendant, in the backseat, behind the front seat passenger. All three men appeared to be "nervous" and "fidgety." Fallow asked the driver why he was on the property. The driver stated that he was there to pick up his uncle, indicating the defendant. The defendant, however, stated that he was not the uncle of the driver. The driver was unable to provide Fallow with a license, but he did provide Fallow with his motor vehicle registration. Fallow advised the three men to keep their hands visible.

Fallow returned to his vehicle to check the information given to him. He also called for backup assistance because he thought that things appeared to be amiss. Fallow kept his eyes on the vehicle during this time and did not observe any furtive movements by the occupants. Kenneth Arrington, a Norwalk police officer, arrived on the scene within minutes. Arrington also did not observe any furtive movements by the occupants as he positioned himself outside of the vehicle. Arrington noted that when he approached the vehicle, the defendant was seated on the driver's side of the backseat. This testimony differed from that of Fallow, as previously stated, who testified that the defendant was seated in the backseat, behind the front seat passenger.[3]

After Arrington arrived, Fallow approached the vehicle again and informed the occupants that they were going to be arrested for trespassing. The occupants were removed from the vehicle one by one. The defendant exited from the backseat on the driver's side of the vehicle. Once the defendant was removed from the

---

[3] Fallow testified that when he subsequently directed the occupants to exit the car, the defendant had slid across the backseat to the driver's side of the car and exited from the driver's side. Thus, the officers' differing observations as to where the defendant was sitting in the car is explained by the fact that the defendant had moved between the time Fallow first observed him and the time when Arrington observed him.

vehicle, Arrington observed a substance, which he suspected to be cocaine, in plain view on the floor of the backseat, behind the front passenger seat. The suspected narcotics were in forty-three knotted bags and envelopes. Arrington also observed a small bag containing a substance suspected to be marijuana and money, in the amount of $15, in the same area. He believed that the narcotics could have been placed there by a front seat or a backseat passenger.

A further search of the vehicle revealed a bag of suspected marijuana in the console between the passenger's seat and the driver's seat, and a cellular telephone and approximately $640 in small denominations under the driver's seat. A crack pipe was found on the front seat passenger's person. No cocaine or marijuana or incriminating evidence was found on the defendant's person. No evidence was introduced to show that the defendant was a user of narcotics.

Fallow advised the occupants that there were going to be additional charges. The defendant identified himself to Fallow as Zeke Williams and also gave the same identification at the police station where he provided the holding facility officer with his correct social security number, address, race, eye color, hair color and birthplace. Through the use of the social security number and an electronic database, the holding facility officer in less than ten minutes was able to determine the defendant's actual identity to be Corey Williams, not Zeke Williams.

Jerry Hart, an analytical chemist with the controlled substances-toxicology laboratory of the department of public safety, tested nine of the forty-three items of evidence submitted to him, pursuant to the laboratory's policy. One item was found to be marijuana. The other eight items tested positive for various forms of cocaine.

At the close of the state's evidence, the defendant moved for a judgment of acquittal as to all charged offenses on the ground that the evidence did not permit a finding of guilty beyond a reasonable doubt. The court denied the defendant's motion. Thereafter, the jury found the defendant guilty of possession of narcotics with intent to sell and interfering with an officer, and not guilty of possession of marijuana. Following the verdict, the defendant renewed his motion for a judgment of acquittal as to the two charges of which he was convicted. The court denied the defendant's motion and sentenced him to a total effective term of ten years imprisonment and six years special parole.[4]

The defendant claims that the evidence introduced in support of his conviction of the two offenses was insufficient to support either of them.

As a preliminary matter, we set forth the applicable standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Na'im B.*, 288 Conn. 290, 295–96, 952 A.2d 755 (2008). "In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence." (Internal quotation marks omitted.) Id., 296; see also *State* v. *Silva*, 285 Conn. 447, 454, 939 A.2d 581 (2008).

[4] The component parts of the sentence were nine years imprisonment and six years special parole for the conviction under § 21a-277 (a), and a consecutive one year term of imprisonment for the conviction under § 53a-167a.

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Myers*, 101 Conn. App. 167, 172–73, 921 A.2d 640, cert. granted on other grounds, 283 Conn. 906, 927 A.2d 919 (2007).

I

The defendant first claims that the state presented insufficient evidence to prove beyond a reasonable doubt that he possessed narcotic substances and that he intended to sell narcotics, the two elements of § 21a-277 (a).[5] We are not persuaded.

---

[5] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense,

## A

We turn first to the defendant's argument that the state presented insufficient evidence to prove beyond a reasonable doubt that he possessed narcotics, one of the two elements of § 21a-277 (a). The second element is the intent to sell, which is discussed in part B.

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the

offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 149–50, 939 A.2d 524 (2008). Numerous cases hold that the test for illegal possession of drugs is that the accused must know that the substance in question is a drug, must know of its presence and exercise dominion and control over it. See *State* v. *Alfonso*, 195 Conn. 624, 633, 490 A.2d 75 (1985); *State* v. *Lee*, 32 Conn. App. 84, 98, 628 A.2d 1318, cert. denied, 227 Conn. 924, 632 A.2d 702 (1993), cert. denied, 510 U.S. 1202, 114 S. Ct. 1319, 127 L. Ed. 2d 668 (1994); *State* v. *Nesmith*, 24 Conn. App. 158, 160, 586 A.2d 628, aff'd, 220 Conn. 628, 600 A.2d 780 (1991); *State* v. *Santiago*, 17 Conn. App. 273, 278, 552 A.2d 438 (1989).

There is no dispute in this case that narcotics were found in the car in which the defendant was a passenger. Instead, the question we must resolve is whether the state presented enough evidence for the jury to have found that the defendant was aware of the presence of narcotics and exercised dominion or control over them. See *Evans* v. *United States*, 257 F.2d 121, 128 (9th Cir.), cert. denied, 358 U.S. 866, 79 S. Ct. 98, 3 L. Ed. 2d 99 (1958). Knowledge of the presence of narcotics and control may be proved circumstantially. Id. Knowledge that drugs are present and under a defendant's control when found in a defendant's home or car is more easily shown, of course, if the defendant has exclusive possession of the area in which the drugs are found. The difficult cases, such as the present one, arise when possession of an area, such as a car or home or an apartment, is shared with another person or persons. In situations in which the putative offender is not in exclusive possession of the premises where the narcotics are found, we may not infer that he or she knew of the presence of the narcotics or that he or she had

control over them, without incriminating statements or circumstances to support that inference. *State* v. *Nesmith*, supra, 24 Conn. App. 161.

As previously provided, when narcotics are not found on the defendant's person, "the state must proceed on the theory of constructive possession, that is, possession without direct physical contact." (Internal quotation marks omitted.) *State* v. *Davis*, 84 Conn. App. 505, 510, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004). "Constructive" is an adjective used to describe something tantamount to or the equivalent of the actual quality or characteristic of the noun it modifies. Actual possession rests on legal title or direct physical contact as opposed to the legal fiction of constructive possession that can be inferred from the circumstances and can be the equivalent of actual possession. The behavior of a defendant or other indicia of possession by a defendant of illegal drugs in a car in which two or more persons are found can be considered in determining whether the defendant constructively possessed illegal substances. *State* v. *Ober*, 24 Conn. App. 347, 352, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, 135, cert. denied, 502 U.S. 915, 112 S. Ct. 319, 116 L. Ed. 2d 260 (1991). In other words, a person may be in constructive possession of something although he has no physical contact with it or legal title to it.

In the present case, it is clear from the evidence that the defendant was not in exclusive possession of the vehicle in which the narcotics were found but, rather, was one of three males in the car. There were, however, incriminating circumstances that support the inference that the defendant constructively possessed the narcotics. The bags of cocaine were located in plain view, on the floor of the backseat of the vehicle, where the defendant's feet had been when Fallow first approached the vehicle. The defendant, therefore, was within arm's

reach of the narcotics and had easier access to them than the other two occupants of the vehicle who were seated in the front seat. After the police stopped the car, the defendant changed his seat, which the jury could have concluded had the purpose of allowing the defendant to distance himself from the narcotics he knew were under his former seat. In addition, the defendant appeared "nervous" and "fidgety." He also gave a false first name to police and initially refused to be fingerprinted. Finally, Fallow testified that when the defendant was informed that he was going to be charged with drug crimes, he did not appear "surprised at all."

The facts of this case are strikingly similar to those of *State* v. *Delarosa*, 16 Conn. App. 18, 547 A.2d 47 (1988). In *Delarosa*, the defendant was a backseat passenger in a motor vehicle that had been stopped by police. Id., 21. Police officers observed large chunks of white power, later proven to be cocaine, on the floor where the defendant was seated. Id. The defendant appeared to be " 'fidgety' " and " 'nervous' . . . ." Id. A further search of the interior of the vehicle revealed a bag containing cocaine protruding from a seat belt recoil receptacle in the front seat. Id. More bags of white powder were found in the trunk. Id., 22. A beeper also was recovered from the person of the front seat passenger. Id., 21. This court upheld the defendant's conviction of possession of cocaine with intent to sell, stating: "[W]hen the drugs are found in a car with more than one passenger, the mere presence of a person in the car is not sufficient to support an inference that he possessed the drugs. . . . There must be other indicia of ownership." (Citation omitted.) Id., 34. In *Delarosa*, as in this case, "there was sufficient other indicia of ownership. The drugs were found on the back floor of the car near the defendant's feet, and the defendant . . . appeared fidgety and nervous." Id.

*Delarosa* instructs that the location of a drug when found is significant in disproving or establishing possession, but if the drugs are located in a common area accessible to a person other than the defendant, that fact alone does not prevent the defendant from being found in possession of the drugs. Of course, more evidence than the presence of a defendant in a car containing drugs is necessary to find that a defendant possessed drugs, but when there are facts "illuminating" possession, an inference of possession may be drawn. See *State* v. *Watson*, 165 Conn. 577, 596, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974). We note the following facts as illuminating possession in the present case: the driver of the car indicated a complicity with the occupants of the car in a criminal enterprise when he expected the defendant's cooperation in explaining their presence on the property by claiming that the defendant needed to be picked up there and was his uncle; the defendant exhibited a consciousness of guilt by giving a false first name; the defendant, as the sole occupant of the rear compartment of the car, had easy access to the narcotics; the defendant changed his seat to move farther away from the narcotics; the defendant's close proximity to the packaged substances gave him knowledge of its narcotic character because "[i]t is by now common knowledge that cocaine is often packaged as a white powder in small plastic bags." (Internal quotation marks omitted.) *State* v. *Delossantos*, 211 Conn. 258, 281, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989). It is also possible for drugs to be jointly possessed. See *State* v. *Alfonso*, supra, 195 Conn. 636 (*Parskey, J.*, concurring in part and dissenting in part); *State* v. *Williams*, 12 Conn. App. 225, 237, 530 A.2d 627 (1987).

If the defendant's reasoning that the jury could not infer that the defendant had constructive possession of

the drugs found were followed, given the evidence of this case, it is unlikely that any occupant of a car in which narcotics are found in a shared area could ever be convicted of possession, without the actual physical presence of drugs on that occupant. Moreover, we emphasize that *Na'im B.* makes it clear, as do many other cases, that evidence is to be assessed with a view to sustaining a jury verdict. *State* v. *Na'im B.*, supra, 288 Conn. 301–302.

On the basis of the cumulative effect of the evidence heard by the jury, we conclude that the jury reasonably could have found that the defendant was in constructive possession of the cocaine.

### B

The defendant also argues that the state presented insufficient evidence to prove beyond a reasonable doubt that he intended to sell narcotics.

As a preliminary matter, we address the state's claim that this court should decline to review the defendant's claim on the ground that it was briefed inadequately. The defendant, in his brief, mentions that there was not "any evidence of [his] intent to engage in any sales activity" but fails to analyze the claim. "We recognize that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene,* 267 Conn. 539, 546, 839 A.2d 1259 (2004).

Nevertheless, although the defendant has failed to provide an analysis of this claim, he has directed our attention to his preserved claim that the evidence was insufficient to support the element of intent to sell narcotics as required by § 21a-277 (a). See id.; *Florian* v.

*Lenge,* 91 Conn. App. 268, 287, 880 A.2d 985 (2005). The record of this case reveals that at the close of the state's evidence and after the jury verdict, the defendant moved for a judgment of acquittal, claiming, among other things, that the evidence was insufficient to prove the element of intent to sell narcotics. As such, the defendant preserved his claim at trial, and he continues to assert the claim on appeal. The facts taken from the transcript of the testimony of the witnesses at trial and the defendant's arguments in both this court and the trial court are sufficient for us to review the claim. Furthermore, the issue may recur in possible future claims by the defendant—for example, in a petition for a writ of habeas corpus—and, therefore, in the interest of finality, and judicial economy, we opt not to postpone or avoid deciding it. Therefore, in the exercise of our discretion, we review the defendant's claim. See *Ward* v. *Greene,* supra, 267 Conn. 546. In summary, the lack of diligence to analyze an issue thoroughly in a brief may be less important than resolving an issue likely to recur in other cases. We do caution all parties, however, that it is the policy of this court not to review claims that have been abandoned through inadequate briefing. See *State* v. *Martin,* 98 Conn. App. 458, 472 n.13, 909 A.2d 547 (2006), rev'd on other grounds, 285 Conn. 135, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008).

"[T]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct." (Internal quotation marks omitted.) *State* v. *Myers,* supra, 101 Conn. App. 174. "[I]t is not one fact, but

the cumulative impact of a multitude of facts which establishes guilt in a case involving circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Glenn*, 30 Conn. App. 783, 793, 622 A.2d 1024 (1993).

"The quantity of narcotics found in the defendant's possession [is] probative of whether the defendant intended to sell the drugs. . . . Also indicative of the defendant's intent to sell narcotics is the manner in which the narcotics are packaged. . . . Evidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell. . . . In addition, the absence of drug paraphernalia indicates that the substance is not intended for personal use, but rather for sale to others." (Internal quotation marks omitted.) *State* v. *Brown*, 90 Conn. App. 835, 840, 879 A.2d 466, cert. denied, 276 Conn. 901, 884 A.2d 1026 (2005).

In this case, there was sufficient evidence of the defendant's intent to sell narcotics. The jury was presented with evidence that the defendant had in his constructive possession forty-three individually packaged bags that contained various forms of cocaine.[6] The state's expert witness, Mark Edwards, testified that the manner in which the cocaine was packaged and the amount of cocaine the defendant possessed were consistent with packaging for sale, rather than for personal use. Also, the defendant was arrested in an area known for drug activity, and he did not have any drug paraphernalia on his person when he was arrested to indicate

---

[6] Although the laboratory did not test all forty-three bags, the jury "was free to infer that the untested material contained the same contraband as the analyzed material from which it was drawn." *State* v. *Jennings*, 19 Conn. App. 265, 270–71, 562 A.2d 545, cert. denied, 212 Conn. 815, 565 A.2d 537 (1989). "The direct evidence of the tested packets and the circumstantial evidence of the untested packs are equally probative." Id., 270. The defendant does not dispute that cocaine and marijuana were found in the car in which he was a passenger.

personal use of drugs. Furthermore, Edwards testified that when a person is selling drugs, one would expect to find cash in small denominations and a cellular telephone, both of which were present in the vehicle the defendant occupied.

On the basis of this evidence, viewed as a whole, we conclude that the jury reasonably could have concluded beyond a reasonable doubt that the defendant intended to sell the cocaine in his constructive possession.

## II

The defendant's second claim is that there was insufficient evidence to support his conviction of interfering with an officer in violation of § 53a-167a (a).[7] We disagree.

To support a conviction for interfering with an officer, the state must prove beyond a reasonable doubt that the defendant obstructed, resisted, hindered or endangered an officer in the performance of his or her duties. General Statutes § 53a-167a (a). Additionally, the state must prove that the defendant had the specific intent to interfere with an officer. *State* v. *Nita*, 27 Conn. App. 103, 111–12, 604 A.2d 1322, cert. denied, 222 Conn. 903, 606 A.2d 1329, cert. denied, 506 U.S. 844, 113 S. Ct. 133, 121 L. Ed. 2d 86 (1992). "[T]he question of intent is purely a question of fact. . . . Intent may be, and usually is, inferred from the defendant's verbal and physical conduct. . . . Intent may also be inferred from the surrounding circumstances." (Internal quotation marks omitted.) *State* v. *Duncan*, 96 Conn. App. 533, 540, 901 A.2d 687, cert. denied, 280 Conn. 912, 908 A.2d 540 (2006).

---

[7] General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."

"The language of § 53a-167a is intended to be broad." *State* v. *Ragin*, 106 Conn. App. 445, 450, 942 A.2d 489, cert. denied, 287 Conn. 905, 950 A.2d 1282 (2008). "By using those words it is apparent that the legislature intended [§ 53a-167a] to prohibit any act which would amount to meddling in or hampering the activities of the police in the performance of their duties. . . . *The [defendant's] act, however, does not have to be wholly or partially successful* . . . [nor must it] be such as to defeat or delay the performance of a duty in which the officer is then engaged. The purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended to thwart that purpose is violative of the statute. . . . Thus, [t]he broad intent of § 53a-167a is to prohibit conduct that hampers the activities of the police in the performance of their duties . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Aloi*, 280 Conn. 824, 833, 911 A.2d 1086 (2007); see also *State* v. *Williams*, 205 Conn. 456, 471, 534 A.2d 230 (1987), citing *State* v. *Beckenbach*, 1 Conn. App. 669, 679, 476 A.2d 591 (1984) (act does not have to be wholly or partially successful), rev'd on other grounds, 198 Conn. 43, 501 A.2d 752 (1985); *State* v. *Brown*, 33 Conn. Sup. 515, 518, 356 A.2d 913 (1976) (same); *State* v. *Harris*, 4 Conn. Cir. Ct. 534, 540, 236 A.2d 479 (1967) (same).[8]

---

[8] Despite the long history of construing the statute to mean that the defendant's intended act need not be successful, we note the following dicta in *State* v. *Aloi*, supra, 280 Conn. 843–44: "[The] delay need not have been substantial to have constituted a hindrance for purposes of § 53a-167a; rather, the delay need only have impeded the police to some appreciable degree." No case of which we are aware defines "appreciable" as used by the court. The dictionary definition of "appreciable" is "capable of being noticed, estimated or measured; noticeable." Webster's New College Dictionary. A dictionary definition may be relied on in the event decisional law does not provide the answer. See *State* v. *Aloi*, supra, 834. Because of our Supreme Court's view of the wide range of conduct prohibited by § 53a-167a "regardless of the extent to which such [failure to provide identification] actually may hinder or obstruct the police in a particular set of circumstances" to perform their duties; id., 837; and taking into account the neces-

In *Aloi*, our Supreme Court determined that a peaceable refusal to provide identification to a police officer who is investigating possible criminal activity pursuant to a *Terry* stop[9] constituted a violation of § 53a-167a. *State* v. *Aloi*, supra, 280 Conn. 833. "[R]efusal to provide identification in connection with a *Terry* stop may hamper or impede a police investigation into apparent criminal activity [and is not] categorically excluded under the expansive language of § 53a-167a." Id.; compare *State* v. *Williams*, supra, 205 Conn. 472 ("[t]he statute's requirement of intent limits its application to verbal conduct intended to interfere with a police officer and excludes situations in which a defendant merely questions a police officer's authority or protests his or her action").

"To hinder is defined as to make slow or difficult the course or progress of." (Internal quotation marks omitted.) *State* v. *Aloi*, supra, 280 Conn. 834. "Although each case must be decided on its own particular facts, as a general matter, a suspect's refusal to comply with a lawful police command to provide identification following a *Terry* stop is likely to impede or delay the progress of the police investigation, even when that refusal is peaceable." Id. "Obtaining a suspect's name in

sity of the police to determine an identity of a defendant or perpetrator, we conclude "appreciable" as used by our Supreme Court is equivalent to "noticeable," that is capable of being measured.

[9] *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), involved the question of whether a search of a defendant that produced a weapon during an investigatory stop by a police officer was an unreasonable search and seizure prohibited by the fourth amendment and made applicable to the states by the fourteenth amendment. In the present case, there was no search of the defendant's person at the police station or at the scene of the initial stop, but rather a request for the name of the defendant. The principles of *Aloi*, to which we must adhere and which govern our disposition of this case, concern the question of whether the police request for the defendant's name was reasonably related to the circumstances that justified the investigatory stop in the first place, rather than whether a search or seizure was violative of the fourth amendment.

the course of a *Terry* stop serves important government interests. Knowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder. On the other hand, knowing identity may help clear a suspect and allow the police to concentrate their efforts elsewhere." *Hiibel* v. *Sixth Judicial District Court of Nevada,* 542 U.S. 177, 186, 124 S. Ct. 2451, 159 L. Ed. 2d 292 (2004). "Thus, [t]he principles of *Terry* permit a [s]tate to require a suspect to disclose his name in the course of a *Terry* stop . . . [because] [t]he request for identity has an immediate relation to the purpose, rationale, and practical demands of a *Terry* stop." (Internal quotation marks omitted.) *State* v. *Aloi,* supra, 839.

In the present case, the evidence adduced at trial established that at the scene of the crime, the defendant represented to Fallow that his name was Zeke Williams. Later, at police headquarters, the defendant once again identified himself as Zeke Williams. The holding facility officer, however, after using a social security number provided by the defendant, determined approximately ten minutes later that the defendant's real name was Corey Williams. Although the defendant asserts in his appellate brief that "Zeke" was a nickname, there was no evidence produced at trial to support that assertion[10] or to give any explanation as to why he used a false first name, particularly when it is a twenty-first century truism that an accurate social security number or residence address will provide an accurate name through electronic means. Thus, all that can be concluded is that the defendant gave police a name different from his real one; in other words, the defendant provided the police with a false name.

---

[10] We recognize that sometimes the giving of a legal first name might be more likely to obstruct or delay the police in the performance of their duties than the giving of a stage name or a name by which a person is popularly known. For example, identification of a defendant as Harry Crosby might cause more delay than an identification as Bing Crosby.

The defendant's providing a false name to police is verbal conduct that is equivalent to the defendant's refusal to give identification to the police in *Aloi*, in that it hampered, or hindered, the ability of officers to perform their duties properly, quickly and efficiently. Just as the police in *Aloi* needed the defendant's name to conduct an investigation, the police in the present case required the defendant's real name to process his arrest. The fact that the police ultimately were able to ascertain the defendant's true identity by using a correct social security number is of no consequence because it is unrelated to whether the police were noticeably hindered in processing the arrest.

The defendant gave a false first name twice. The second time was in the police station when he was being "booked" for the drug offenses. The court correctly charged the jury that whether the defendant intended to slow the progress of his arrest or to delay or impede the police in the arrest process was a question for it to resolve, given the statement made and the circumstances at the time.[11] Intent to delay, obstruct or hinder is more likely to be present if the defendant is asked his name in a police station and responds falsely when he is present there in connection with his arrest and the investigation into his criminal behavior as opposed to being asked the same question elsewhere under other circumstances. See *State* v. *Aloi*, supra, 280 Conn. 845. For example, failure to provide a legal or correct name to a policeman by a person who is unaware of any possible investigation of a crime or of any suspicion of his possible involvement in a crime may not provide the requisite intent to violate § 53a-167a.[12]

---

[11] The defendant does not claim that the charge to the jury was defective.

[12] Although § 53a-167a does not expressly require an intent to violate its provisions, the statute encompasses only conduct that is intentional. *State* v. *Williams*, supra, 205 Conn. 474.

In this case, the jury reasonably could have inferred that the defendant intended to hinder the process or progress of his arrest, or perhaps even avoid his arrest altogether. In fact, it is difficult to conceive of any other explanation for the conduct, and, again, there was no evidence produced at trial that provided such an explanation. We recognize that the evidence for conviction was not overwhelming, but in reviewing a sufficiency of the evidence claim, we must construe the evidence in the light most favorable to sustaining the verdict. We conclude that the verdict reasonably was supported by the evidence. Accordingly, the defendant's claim of insufficiency of evidence to prove interference with an officer fails.

The judgment is affirmed.

In this opinion the other judges concurred.