******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ALVIN SLAUGHTER
(AC 35624)

Lavine, Sheldon and Bishop, Js.

*Argued April 7—officially released July 1, 2014*

(Appeal from Superior Court, judicial district of
Waterbury, Crawford, J.)

*Glenn W. Falk*, assigned counsel, for the appellant
(defendant).

*Brett R. Aiello*, special deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Don E. Therkildsen*, *Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Alvin Slaughter, appeals from the judgment of conviction, rendered after a trial to the court, of two counts of possession of narcotics with intent to sell in violation of General Statutes §§ 21a-278 (a) and 21a-277 (a), possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b), and possession of an amphetamine-type substance with intent to sell in violation of § 21a-278 (b).[1] On appeal, the defendant claims that there was insufficient evidence to sustain his conviction.[2] We affirm the judgment of the trial court.

The following pertinent evidence was adduced at trial. On the basis of information provided by an informant, the Waterbury Police Department set up surveillance of the defendant outside of an apartment building located at 839 North Main Street (apartment). The neighborhood in which the apartment was located was known to be a high crime area where significant sales of illegal drugs took place. During that time, officers observed the defendant socializing with others at the billiards hall on the first floor of the apartment building. From time to time, the defendant left the billiards hall and ascended an outdoor stairwell, which led directly to the second floor apartment. On four occasions, the officers witnessed the defendant exit the apartment from its rear entrance, walk to a vehicle that had parked by the curb in front of the apartment building, and have a brief conversation with the person or persons in the vehicle.[3] On each occasion, the defendant reached into the vehicle briefly, touched hands with one of the passengers, and then placed his hands into his pockets before returning to the apartment. On one of these occasions, the defendant exited the apartment, approached the vehicle parked on the street, spoke briefly with the driver of the vehicle, reentered the apartment, and then approached the vehicle once more to conduct what officers believed, from their experience and training, to be a hand-to-hand sale of illegal drugs.[4] After each meeting between the defendant and the occupants of vehicles, the defendant returned to the second floor apartment. On the basis of their observations, the officers secured a search and seizure warrant for the defendant's person and the second floor apartment.

On March 8, 2012, the defendant was stopped while driving a vehicle owned by Zachary Foster, who also was being investigated in connection with his involvement in the sale of illegal drugs. The defendant's girlfriend, Fateema Brit, was a passenger in the vehicle. Upon searching the defendant's person, police discovered a key to the second floor apartment at 839 Main Street on the same key ring as the car key. Police found a second key to the apartment in the defendant's pants pocket together with $1559 in cash, $1500 of which was

bundled by an elastic band. There were no drugs or drug paraphernalia found on the defendant's person, nor was there any such evidence found in the vehicle.

Upon executing a search of the apartment, officers discovered a hole in the wall, which was covered by a Bob Marley poster. When officers searched the opening in the wall, they found cocaine, cocaine in freebase form, marijuana, and ecstasy. The officers also found paraphernalia including, inter alia, one razor blade with drug residue, two hundred forty-four heat sealed clear plastic bags, each containing cocaine freebase, one black digital scale with drug residue, one clear plastic bag containing sixty-four tablets of ecstasy, one folded glassine bag containing heroin, and several plastic bags containing marijuana. In all, drugs with a street value of approximately $10,000 to $15,000 were recovered from the apartment. While searching the apartment, officers also discovered mail addressed to Brit, who later admitted that the apartment was hers and that she lived there. There was testimony at trial, also, that the defendant had told his probation officer, Julie Papas, that he occasionally stayed at Brit's apartment at 839 Main Street.

The defendant was arrested and charged, by way of an amended information, with two counts of possession of narcotics with intent to sell in violation of §§ 21a-278 (a) and 21a-277 (a), possession of marijuana with intent to sell in violation of § 21a-277 (b), and possession of an amphetamine-type substance with intent to sell in violation of § 21a-278 (b). The defendant waived his right to a jury trial and proceeded to a trial by the court. At the conclusion of the trial, the court, *Crawford, J.*, found the defendant guilty on all four counts and sentenced him to a total effective term of twelve years of incarceration, execution suspended after seven years, and five years of probation. This appeal followed.

We begin by setting forth the appropriate standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the [finding of guilt]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the [trier of fact] to conclude that a basic

fact or an inferred fact is true, the [trier of fact] is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 110 Conn. App. 778, 783–84, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008).

The defendant's specific claims are governed by the following legal principles. "[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime. . . . [T]he test for illegal possession of drugs is that the accused must know that the substance in question is a drug, must know of its presence and exercise dominion and control over it." (Citations omitted; internal quotation marks omitted.) Id., 785–86.

Importantly, "[k]nowledge of the presence of narcotics and control may be proved circumstantially. . . . Knowledge that drugs are present and under a defendant's control when found in a defendant's home or car is more easily shown, of course, if the defendant has exclusive possession of the area in which the drugs are found. The difficult cases, such as the present one, arise when possession of an area, such as a car or home or an apartment, is shared with another person or persons. In situations in which the putative offender is not in exclusive possession of the premises where the narcotics are found, we may not infer that he or she knew of the presence of the narcotics or that he or she had control over them, without incriminating statements or circumstances to support that inference." (Citation omitted.) Id., 786–87; see also *State* v. *Nesmith*, 24 Conn. App. 158, 161, 586 A.2d 628, aff'd, 220 Conn. 628, 600

A.2d 780 (1991).

In the case at hand, the state's theory of the case was that the defendant was in constructive, nonexclusive possession of the illegal drugs and paraphernalia discovered in the second floor apartment. The defendant, in response, claims that the evidence adduced at trial was insufficient to support his conviction of possession of narcotics, marijuana, and an amphetamine-type substance with intent to sell.[5] Specifically, he argues that the state did not produce sufficient evidence to prove beyond a reasonable doubt that he possessed the drugs in question because it did not prove that he had exclusive or constructive possession of the apartment in which the drugs were discovered and that he did not have actual knowledge of the presence of the drugs in the apartment. We are not persuaded by the defendant's arguments. Rather, we conclude that the state adduced sufficient evidence from which the court reasonably could infer that the defendant had constructive possession of the drugs through his possession and control of the apartment, and that the court could infer the defendant's knowledge of the presence of the drugs in the apartment from the observations by the police of his dealings with the occupants of the vehicles, including his frequent trips to and from the apartment in the course of these transactions.

In short, we believe that the cumulative evidence adduced by the state allowed the court to draw a permissible inference concerning the defendant's knowledge and control of the drugs in the apartment. The fact that people other than the defendant, such as Brit, also may have had access to the apartment does not, in and of itself, disprove that the defendant possessed those drugs. See *State* v. *Williams*, supra, 110 Conn. App. 789. Additionally, we are not persuaded by the defendant's argument that because the drugs were not in plain sight in the apartment, the court had an insufficient basis from which to infer the defendant's knowledge of the presence of the illegal substances in the apartment. See, e.g., *State* v. *Polanco*, 69 Conn. App. 169, 177–78, 797 A.2d 523 (2002). In concluding that the defendant had knowledge of the presence of the drugs in the apartment, the court could fairly look to other incriminating circumstances regarding the defendant's behavior and relationship to the apartment.

As noted, the state presented evidence that the defendant actively was engaged in selling drugs to customers who drove up to the front of the apartment in their vehicles. The state also presented evidence that, in each such drug sale, the defendant either came out to the vehicle from the apartment or returned to the apartment before conducting the sale. On each occasion, the defendant was seen receiving paper currency and putting it into his pocket after the transaction. At trial, Detective Richard Innaimo, an experienced detective who has

made hundreds of drug arrests, explained that such actions were consistent with the behaviors of drug sellers and purchasers. That evidence, together with the testimony of Detective Thomas Cavanaugh, who had similar experience and training, concerning the same transactions, reasonably could have informed the court's understanding that the defendant's actions were to facilitate the transfer of drugs obtained from the apartment to the occupants of the vehicles as sales. The detectives' conclusions at trial were further supported by testimony that the neighborhood in which the apartment was located was known to be a high crime area in which drug sales took place. See *State* v. *Barber*, 64 Conn. App. 659, 667, 781 A.2d 464 ("[e]vidence demonstrating that the defendant was present in a known drug trafficking area further suggests an intent to sell" [internal quotation marks omitted]), cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001).

As additional circumstantial evidence, the court reasonably could consider that, when the defendant was arrested, he possessed money bundled in a manner consistent with the way in which drug dealers carry cash, even though he had no drugs or drug paraphernalia either on his person or in the car he was driving. On the basis of the detectives' testimony as to the modus operandi of drug dealers coupled with the defendant's behavior, the court reasonably could have inferred that the defendant was keeping the drugs he sold in the apartment rather than on his person or in the car he drove. And, pointedly, it was reasonable for the court to infer that he kept his supply of drugs in the apartment he frequented in the course of his illicit transactions.

As to the defendant's claim that the court could not reasonably conclude that the defendant possessed all of the drugs discovered behind the Bob Marley poster, we believe that the court reasonably could infer that because the drugs were secreted together, the defendant had knowledge of the presence of all of them and, therefore, that he constructively possessed all the illicit drugs discovered by the police in the apartment. On the basis of the cumulative evidence adduced at trial, the court reasonably could have inferred that the defendant kept the drugs in the apartment and that he obtained them for sale to occupants of the vehicles from the apartment, which, by inference, was his base of operations.

The defendant argues, in response to the state's claim that he was in nonexclusive possession of the apartment, that the state proved only that he had one or more keys to the apartment and had been seen there only in the week leading up to the search of his person and the apartment. In making this argument, however, the defendant ignores additional telling evidence regarding his relationship to the apartment. As noted, when officers stopped the defendant and searched his

person, they discovered two keys to the apartment in which they later found illegal drugs. See *State* v. *Goodrum*, 39 Conn. App. 526, 533–34, 665 A.2d 159 ("[t]he defendant had keys to [the] apartment when he was arrested, indicating the defendant's access to the apartment and exercise of control over its contents"), cert. denied, 235 Conn. 929, 667 A.2d 554 (1995). In addition, Papas testified that the defendant had notified her that he sometimes stayed at Brit's apartment. And, of course, the testimony of the police officers conducting surveillance supported a reasonable inference that the defendant had unimpeded access to the apartment. Although Brit was a lessee of the apartment and admittedly lived there, there is no evidence to support a belief that she knew of the presence of drugs in the apartment. Additionally, the state offered no evidence suggestive of Brit's involvement in the sale of illicit drugs.

Although the evidence of the defendant's culpability is circumstantial, we note that "[i]n the review process, the probative force of the evidence is not diminished if it consists in whole or part of evidence that is circumstantial rather than direct." *State* v. *Boykin*, 27 Conn. App. 558, 563, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). On the basis of the cumulative evidence presented at trial, and assessing the evidence in the light most favorable to sustaining the judgment, we conclude that the court reasonably could have found that the defendant was in possession of the illicit drugs discovered in the apartment and that he possessed these drugs with the intent to sell them.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court also found that the defendant had violated his probation. That finding, however, is not the subject of this appeal.

[2] The defendant also argued that the court failed to ensure that he had knowingly, intelligently, and voluntarily waived his right to a jury trial. Because the defendant later withdrew this claim, we do not address it in this opinion.

[3] Although the record is not completely clear, the evidence adduced at trial appears to indicate that there were two separate entrances into the second floor apartment. The door from which police observed the defendant entering and exiting was at the top of the stairs on the second floor and led directly into the kitchen of the apartment.

[4] The police officers were permitted to testify on the basis of their experience and training that the defendant's behavior and that of the vehicles' occupants typified the behavior of those engaged in drug transactions. For example, at trial, Detective Richard Innaimo testified that drug dealers typically use other people's homes and vehicles to avoid having a license plate or address traced back to them. Innaimo further stated that on the basis of his training and experience in the field, he believed that the defendant's behavior was indicative of selling drugs. Similarly, Detective Thomas Cavanaugh, who conducted surveillance of the defendant alongside Innaimo, testified that he believed that the defendant's actions were consistent with that of a drug dealer.

[5] On appeal, the defendant does not challenge the sufficiency of the evidence adduced at trial with respect to whether he had the intent to sell narcotics. That is, the defendant does not argue that the quantity of drugs seized from the apartment would support a finding that they were there only for personal use. By implication, the defendant concedes that the evidence of a substantial quantity of various drugs would support the inference that the drugs were there for sale.