# STATE OF CONNECTICUT *v.* JOHN D. BRIGGS
## (AC 26052)

Schaller, DiPentima and Harper, Js.

Argued February 9—officially released April 11, 2006

*James M. Fox*, special public defender, for the appellant (defendant).

*Susan C. Marks*, supervisory assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *David J. Smith*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, John D. Briggs, appeals from the judgment of conviction, rendered after a jury trial, of disorderly conduct in violation of General Statutes § 53a-182 (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a. On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction and (2) he was denied his right to due process as a result of prosecutorial misconduct. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 14, 2004, the defendant telephoned a police dispatcher regarding a dispute concerning rent with his tenant who lived next door. Three state troopers, James Collins, David Abely and David Green, proceeded to the defendant's home to investigate. Green first spoke with the tenant and told him that any dispute was a civil matter that could be resolved through small claims court. The troopers then proceeded to the defendant's house, where they were invited inside. The defendant was sitting at the kitchen table. The defendant was belligerent and interrupted the troopers as they attempted to speak with him. He appeared to be intoxi-

cated.[1] The defendant was complaining that the tenants had not paid rent. Because the troopers were unable to communicate with the defendant, they left the house.[2]

Approximately ten to fifteen minutes later, the troopers again were dispatched to the defendant's house. The dispatcher had received numerous 911 telephone calls from the defendant and sent the troopers there to instruct the defendant not to use 911 for nonemergencies. Abely was the first to arrive, and the defendant's wife, Linda Briggs, let him into the house. Abely observed the defendant speaking on the telephone, yelling and screaming. As Abely approached, he asked the defendant to end the telephone call and to discuss the matter. At this point, the defendant attempted to strike Abely in the head or face with the telephone. Abely grabbed the defendant's arm and brought him to the ground, at which time Green, who had arrived, assisted him in restraining the defendant. The two troopers[3] struggled with the defendant, who was kicking and attempting to strike them, and eventually restrained him with handcuffs and placed him into a police vehicle.

The defendant was tried and convicted of disorderly conduct and interfering with an officer. The court sentenced the defendant to a total effective term of six months incarceration, execution suspended, and one

---

[1] Green testified that they observed a beer can on the table where the defendant was sitting, and Abely stated that he smelled alcohol on the defendant's breath and noticed the defendant's bloodshot eyes and slurred speech.

[2] Green indicated that he spoke with the defendant's wife and told her that "[w]e're not getting anywhere with your husband; it seems to me he's been drinking tonight. Just not letting us get a word in. . . . [T]his is what we're going to do, I'm going to go back to the [tenant], tell them you're not going to come over [there] anymore and interrupt them. At that point, if there's a problem with the water bill, it's a civil [matter]. If [the defendant] has any questions . . . when he sobers up in the morning, he can give me a call at the barracks."

[3] Both Abely and Green testified that they were wearing their state trooper uniforms.

year of probation, plus a fine of $750. This appeal followed.[4] Additional facts will be set forth as necessary.

## I

The defendant first claims that the evidence was insufficient to sustain his conviction. Specifically, the defendant argues that because the state failed to prove beyond a reasonable doubt all of the elements of the charged crimes, the court improperly denied his motions for a judgment of acquittal.[5] We are not persuaded.

"The appellate standard of review of sufficiency of the evidence claims is well established. In reviewing a sufficiency [of the evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"The evidence must be construed in a light most favorable to sustaining the jury's verdict. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . [T]he inquiry into

---

[4] The defendant has served his sentence. We note that the completion of the sentence does not render the defendant's appeal moot because the defendant may be subject to collateral legal consequences as a result of the conviction. See *Sibron* v. *New York*, 392 U.S. 40, 53–55, 88 S. Ct. 1889, 20 L. Ed. 2d 917 (1968); see also *Barlow* v. *Lopes*, 201 Conn. 103, 112, 513 A.2d 132 (1986) ("[i]t is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served"); *State* v. *Falcon*, 84 Conn. App. 429, 431 n.3, 853 A.2d 607 (2004) (same); see also *State* v. *Scott*, 83 Conn. App. 724, 727, 851 A.2d 353 (2004) (same).

[5] The defendant made two motions for a judgment of acquittal, the first after the state rested and the second before sentencing.

whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . .

"We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility. . . . We are content to rely on the [jury's] good sense and judgment." (Internal quotation marks omitted.) *State* v. *Serrano*, 91 Conn. App. 227, 241–42, 880 A.2d 183, cert. denied, 276 Conn. 908, 884 A.2d 1029 (2005); see also *State* v. *Farnum*, 275 Conn. 26, 32, 878 A.2d 1095 (2005). Constrained by this rigorous standard of review and these legal principles, we address the defendant's claim with respect to each count.

A

The defendant was convicted of disorderly conduct in violation of § 53a-182 (a) (1). That statute provides in relevant part: "A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior . . . ." We have explained that "the crime of disorderly conduct consists of two elements: (1) that the defendant intended to cause, or recklessly created a risk of causing, 'inconvenience, annoyance or alarm' and (2) that he did so by engaging 'in fighting or in violent, tumultuous or threatening

behavior . . . .' " *State* v. *Leavitt*, 8 Conn. App. 517, 522, 513 A.2d 744, cert. denied, 201 Conn. 810, 516 A.2d 886 (1986).

In the present case, both Abely and Green testified that the defendant had appeared frustrated with the situation involving his tenant. They further testified that the defendant had lunged at Abely in an aggressive manner and had attempted to strike him in the head or face with the telephone. The jury was free to credit this testimony[6] and find that the defendant engaged in fighting or violent behavior with the intent to cause, or recklessly created a risk of causing inconvenience, annoyance or alarm.[7] Simply put, reviewing the evidence under our standard of review, we conclude that a reasonable jury could have found that the state proved all of the elements of the crime of disorderly conduct beyond a reasonable doubt.

---

[6] To the extent that the defendant contends that his wife's version of the events of January 14, 2004, conflicted with the troopers' testimony and therefore created reasonable doubt, this argument is without merit. It is axiomatic that the jury, as the fact finder, was free to accept or reject the testimony of the witnesses. "[The jury] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [jury] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Senquiz*, 68 Conn. App. 571, 576, 793 A.2d 1095, cert. denied, 260 Conn. 923, 797 A.2d 519 (2002). In other words, "[t]his court will not revisit credibility determinations." *State* v. *Holmes*, 90 Conn. App. 544, 547, 877 A.2d 826, cert. denied, 275 Conn. 927, 883 A.2d 1250 (2005).

[7] "As it is virtually impossible to discern one's intent, absent an explicit declaration thereof, a person's state of mind usually is proven by circumstantial evidence. Intent may be and usually is inferred from conduct. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Coleman*, 83 Conn. App. 672, 680, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005); see also *State* v. *Simmons*, 86 Conn. App. 381, 387, 861 A.2d 537 (2004), cert. denied, 273 Conn. 923, 871 A.2d 1033, cert. denied, 546 U.S. 822, 126 S. Ct. 356, 163 L. Ed. 2d 64 (2005).

B

The defendant also was convicted of interfering with an officer in violation of § 53a-167a. Subsection (a) of that statute provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." "Intent is a necessary element of this offense. *State* v. *Pagano*, 23 Conn. App. 447, 449–50 n.1, 581 A.2d 1058, cert. denied, 217 Conn. 802, 583 A.2d 132 (1990); *State* v. *Flynn*, 14 Conn. App. 10, 18, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988). Section 53a-167a is broad in scope . . . and encompasses acts of physical resistance. . . . In enacting § 53a-167a, the legislature sought to prohibit behavior that hampers the activities of the police in the performance of their duties. . . . The statute's purpose is to ensure orderly compliance with the police during the performance of their duties; any act intended to thwart this purpose violates the statute." (Citations omitted.) *In re Adalberto S.*, 27 Conn. App. 49, 55, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992).

In the present case, Abely and Green testified that they were wearing uniforms identifying themselves as state police troopers and were present in the defendant's home in response to his 911 telephone calls. Abely indicated that, following the defendant's attempt to strike him with the telephone, he wrestled the defendant to the ground. Abely then attempted to place the defendant under arrest and handcuff him. Green assisted Abely because the defendant continued to struggle by attempting to punch and kick the troopers. Both troopers were on top of the defendant in a combined effort to place the defendant under control. Finally, both troopers testified that placing an individual

under arrest was part of their official duties as state police troopers.

As we previously explained, the jury was free to credit the testimony of Abely and Green. Looking at the evidence in a light most favorable to sustaining the verdict, we conclude that the jury could have found that the state proved all of the elements of the crime of interfering with a police officer beyond a reasonable doubt. The defendant's claim of insufficiency of the evidence is, therefore, without merit.

II

The defendant next claims that he was denied his right to due process as a result of prosecutorial misconduct. Specifically, he argues that the prosecutor made an improper comment during rebuttal argument regarding the audio recording of the 911 telephone calls made by the defendant that had been introduced into evidence as a full exhibit. We disagree.

The following additional facts are necessary for our resolution of the defendant's claim. Linda Briggs testified at trial. Her version of the events of January 14, 2004, varied greatly from the troopers' testimony.[8] She indicated that one of the tenants had attempted to break into her house while the defendant was calling the police for the first time. According to Linda Briggs, one of her children, who was downstairs, was screaming in fear as the tenant attempted to break in. Linda Briggs, who was also fearful of the tenant, then screamed at the child to go upstairs. She indicated that "there was a lot of commotion" and that she could not hear what the defendant was saying on the telephone. She also stated that the defendant might have been speaking

---

[8] She stated that the defendant never lunged at the troopers or attempted to strike them with the telephone.

softly. The audio recording of the 911 telephone calls was played before the jury.

During closing argument, defense counsel invited the jury to consider the defendant's demeanor during his telephone calls to the 911 operator. "Does that sound like [the defendant] that was on the tape? The [911 operator] tells them they're on the way to arrest him [and] he says fine. He's not angry, he's not out of control, he's not drunk, he's not slurring his words, [and] he's not belligerent." Later in his argument to the jury, defense counsel again raised this issue. "You heard on the tape [that] he didn't sound angry, he didn't sound out of control, he didn't sound drunk. [The defendant] wanted the police there. The police got there, that's what he wanted. Why would he bring the police to his home just to attack them? It doesn't make sense."

In rebuttal argument, the prosecutor made a reference to the 911 calls. "[T]he defendant's wife says at the time he calls 911—makes the 911 call—they're in the kitchen. She's downstairs with him, she yells at the kids because the kids are crying—yelling and crying—because [the tenant is] actually trying to break into the house while [the defendant] is on the phone. And then I said, are you listening to what [the defendant] says, and she said, well he was talking quietly, I believe, softly. I believe that was her testimony, but it's your recollection. But he was talking not in a normal voice, quietly. The defense just played you the tape, and I'll play it again. I'd ask you to listen closely and see if you can hear any kids screaming or crying."

At this point, defense counsel objected on the ground that no evidence had been introduced regarding the quality of the tape or the ability of the recording equipment to pick up background noise. The court overruled the objection as follows: "The tape is a full exhibit; it stands for what it stands for. The jurors are entitled to

draw whatever inferences that they see fit. Whether they see this as a sufficient factual basis is up to the jury. The exhibit is a full exhibit, and it may be played during final argument. The objection is overruled."

"We conduct a two step inquiry in analyzing claims of prosecutorial misconduct. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. . . . We recognize that because closing arguments often have a rough and tumble quality about them, some leeway must be afforded to the advocates in offering arguments to the jury in final argument. [I]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Nevertheless, [w]hile a prosecutor may argue the state's case forcefully, such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . .

"The issue is whether the prosecutor's conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. . . . [The court] must view the prosecutor's comments in the context of the entire trial. . . . [T]he fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . It is in that context that the burden [falls] on the defendant to demonstrate that the remarks were so prejudicial that he was deprived of a fair trial and the entire proceedings were tainted. . . . The factors to be considered in assessing the prosecutor's actions include the extent to which the misconduct was invited by defense conduct or argument . . . the sever-

ity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case . . . *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987)." (Citations omitted; internal quotation marks omitted.) *State* v. *Hedge*, 93 Conn. App. 693, 702–703, 890 A.2d 612, cert. denied, 277 Conn. 930, 896 A.2d 102 (2006).

We conclude that the reference to the capabilities of the recording equipment in the present case did not constitute prosecutorial misconduct. At the outset, we note that the 911 recording was admitted into evidence as a full exhibit. As such, the prosecutor was free to comment on the recording. "Our decisional law on prosecutorial misconduct makes clear that as the state's advocate, a prosecutor may argue the state's case forcefully, [provided the argument is] fair and based upon the facts *in evidence* and the reasonable inferences to be drawn therefrom." (Emphasis in original; internal quotation marks omitted.) *State* v. *Pedro S.*, 87 Conn. App. 183, 194, 865 A.2d 1177, cert. denied, 273 Conn. 924, 871 A.2d 1033 (2005). The prosecutor simply invited the jurors to listen to the recording and determine whether they could hear children crying or screaming in the background or the defendant speaking in a quiet voice. The invitation was made in response to the comments made by defense counsel regarding the recording. See *State* v. *Crocker*, 83 Conn. App. 615, 664–66, 852 A.2d 762 (prosecutor's comments properly made in response to defense counsel's closing argument), cert. denied, 271 Conn. 910, 859 A.2d 571 (2004). As we have noted, "[a] prosecutor may invite the jury to draw reasonable inferences from the evidence; however, he or she may not invite sheer speculation unconnected to evidence." (Internal quotation marks omitted.) *State* v. *Smith*, 91 Conn. App. 133, 141, 880 A.2d 959, cert. denied, 276 Conn. 917, 888 A.2d 86 (2005).

We do not believe that the prosecutor in this case impermissibly transgressed into the realm of sheer speculation unconnected to the evidence adduced at trial, but instead properly directed the jury's attention to the 911 recording.

"To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Jarrett*, 82 Conn. App. 489, 501, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). We conclude that the prosecutor's invitation to the jury to listen closely to the 911 recording, which had been admitted into evidence as a full exhibit, was proper.[9] Accordingly, the prosecutorial misconduct claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[9] We note that even if we were to apply the *Williams* factors to the instance of alleged misconduct in this case, we would conclude that the defendant was not deprived of his right to a fair trial.