******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* JASMINE LAMANTIA
## (AC 40157)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

Convicted, following a jury trial, of the crimes of interfering with an officer and tampering with a witness, the defendant appealed to this court, claiming that the evidence was insufficient to support her conviction of those crimes. Following an altercation at a residence involving her boyfriend, R, and M, the defendant sent certain text messages to R in which she asked R to lie to the police regarding the altercation and to make sure their stories matched. *Held*:

1. The evidence was insufficient to support the defendant's conviction of interfering with an officer; a conviction of that offense required evidence that the defendant obstructed, resisted, hindered, or endangered a peace officer while the officer was in the performance of his duties, and here, the communications that formed the basis for the defendant's conviction were nonviolent and nonthreatening text messages directed to R that were sent in order to induce R to report to a police officer a version of events concerning the altercation that matched her own prior statements to the police, which messages did not constitute physical conduct or amount to fighting words that inflicted injury or tended to incite an immediate breach of peace for purposes of the crime of interfering with an officer.

2. The defendant's claim that the state failed to prove that she had the specific intent to influence a witness at an official proceeding by sending the text messages to R was unavailing, the evidence having been sufficient to support her conviction of tampering with a witness in violation of statute (§ 53a-151), which applies to any conduct intended to induce a witness to testify falsely or to refrain from testifying in an official proceeding, and to conduct intentionally undertaken to undermine the veracity of the testimony given by a witness; although the defendant claimed that it was not probable that a criminal court proceeding would occur arising out of the altercation in which R would testify, the term official proceeding as used in the statute was not limited to a prosecution of R, and the jury reasonably could have found that the defendant tampered with R by sending him the text messages shortly after his altercation with M, as the defendant's text messages encouraged R to lie to an officer and evinced that the defendant was aware of the officer's investigation of the altercation, and the jury could have concluded that the defendant believed than an official proceeding against her or the other participants in the altercation probably would result therefrom.

Argued January 9—officially released May 8, 2018

*Procedural History*

Substitute information charging the defendant with the crimes of interfering with a police officer and tampering with a witness, brought to the Superior Court in the judicial district of New London, geographical area twenty-one, and tried to a jury before the court, *A. Hadden, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Reversed in part; judgment directed; further proceedings.*

*Conrad O. Seifert*, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Michael Regan*, state's attorney, and *Christa L. Baker*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Jasmine Lamantia, appeals from the judgment of conviction, rendered after a jury trial, of interfering with an officer in violation of General Statutes § 53a-167a and tampering with a witness in violation of General Statutes § 53a-151. On appeal, the defendant claims that the evidence was insufficient to support her conviction for these offenses. We agree with the defendant with respect to the interfering with an officer count, but disagree as to the tampering with a witness count. Accordingly, we reverse in part and affirm in part the judgment of the trial court.

The jury reasonably could have found the following facts in support of the verdict.[1] On the evening of July 24, 2015, Earl F. Babcock and Jason Rajewski spent three or four hours socializing at a bar in Norwich. At that time, Rajewski was involved romantically with the defendant. At some point that evening, the defendant arrived at the bar. After midnight, Babcock and Rajewski followed the defendant to a house located at 18 Bunny Drive in Preston. At this location, some teenagers, including the defendant's son, Joshua Bivens, were having a party. Upon her arrival, the defendant parked her car and immediately ran into house. Babcock parked his car and remained outside with Rajewski.

David Moulson, the defendant's former boyfriend,[2] drove his vehicle into the driveway, and directed the headlights at Babcock and Rajewski. Moulson, exited his car and ran toward them while swinging his arms. Babcock fell over backwards, as he was "disoriented" by the headlights shining in his eyes. Moulson and Rajewski engaged in a verbal and physical altercation that ended with Rajewski striking Moulson with his right hand and Moulson bleeding from his face. Moulson ran into the house and called the police. Babcock and Rajewski left after hearing from the defendant about Moulson's phone call. Five minutes later, Babcock dropped Rajewski off at his house, and then proceeded home.

Jonathan Baker, a Connecticut state trooper, received a dispatch to 18 Bunny Drive for an active disturbance at approximately 2:30 a.m. Baker spoke with Moulson in the presence of the defendant. Moulson claimed that two males, one of whom he identified as Rajewski, had assaulted him as he exited his vehicle. Baker obtained an address for Rajewski, and proceeded to that address to continue the investigation.

At Rajewski's residence, Baker knocked on the door. Rajewski indicated that he knew why Baker was there and then presented his cell phone to Baker. Rajewski asked Baker to read the text messages that he had received from the defendant. Baker read the text conversation and concluded that the defendant had requested that Rajewski lie to him. Rajewski then

received a call from Babcock and permitted Baker to answer his phone. Baker took Rajewski into custody, drove him to the state police barracks for processing, and then went to Babcock's house. Following a conversation, Baker arrested Babcock and transported him to the barracks for processing.

Later that morning, the defendant arrived at the barracks to pick up Moulson, who also had been arrested. Baker confronted the defendant about the text messages that she had sent to Rajewski, and then placed her under arrest. The defendant subsequently was charged, tried, and convicted of interfering with a police officer in violation of § 53a-167a (a) and tampering with a witness in violation of § 53-151 (a). The court imposed a concurrent sentence for each count of one year incarceration, execution suspended, and two years of probation. This appeal followed. Additional facts will be set forth as necessary.

On appeal, the defendant claims that the evidence was insufficient to sustain her conviction. We begin by setting forth our well established standard of review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Crespo*, 317 Conn. 1, 16–17, 115 A.3d 447 (2015); see also *State* v. *Rodriguez*, 146 Conn. App. 99, 110, 75 A.3d 798 (defendant who asserts insufficiency claim bears arduous burden), cert. denied, 310 Conn. 948, 80 A.3d 906 (2013). When a claim of insufficient evidence turns on the appropriate interpretation of a statute, however, our review is plenary. See *State* v. *Webster*, 308 Conn. 43, 51, 60 A.3d 259 (2013).

I

We first address the defendant's claim that the evidence was insufficient to support her conviction of interfering with a police officer. The defendant argues that our decision in *State* v. *Sabato*, 152 Conn. App. 590, 98 A.3d 910 (2014), aff'd, 321 Conn. 729, 138 A.3d 895 (2016), controls the present appeal. Specifically, she contends that her text messages to Rajewski, a verbal communication that did not constitute fighting words, cannot form the basis for a violation of § 53a-167a. We agree with the defendant.

Section 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties." Accordingly, "[t]he elements of this crime . . . are (1) a person obstructs, resists, hinders, or endangers, (2) a peace officer, (3) while the officer is in the performance of his or her duties." *State* v. *Wearing*, 98 Conn. App. 350, 355, 908 A.2d 1134 (2006), cert. denied, 281 Conn. 905, 916 A.2d 47 (2007).

In *State* v. *Briggs*, 94 Conn. App. 722, 728, 894 A.2d 1008, cert. denied, 278 Conn. 912, 899 A.2d 39 (2006), we noted that this statute, which is broad in scope, proscribes behavior that hampers the actions of the police in the performance of their duties. "[A]ny act intended to thwart this purpose violates the statute." (Internal quotation marks omitted.) Id. Additionally, "[t]his statutory provision has been interpreted to require the intention to interfere with the performance of an officer's duties as a necessary element of the offense." *State* v. *Flynn*, 14 Conn. App. 10, 18, 539 A.2d 1005, cert. denied, 488 U.S. 891, 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988); see also *State* v. *Briggs*, supra, 728

(intent is necessary element of § 53a-167a).

On appeal, the defendant contends that the communication that formed the basis for her conviction of interfering with a police officer was nonviolent and nonthreatening text messages directed to Rajewski, not Baker.[3] The following additional facts are necessary for our discussion. In the course of his investigation, Baker left Bunny Drive and proceeded to Rajewski's residence. Baker knocked on the door and asked if Rajewski knew why he was there. Rajewski responded affirmatively, and then handed Baker his cell phone. Rajewski requested that Baker read the text messages that he recently had received from the defendant.

Baker testified that the text messages were "a conversation between [Rajewski] and [the defendant] about how their stories have to match and have to be on the same pages and the cops were coming and a couple of other things." Baker then explained that he had recorded the text message conversation into his police report.[4] The defendant first texted Rajewski telling him that the "cops are coming," that he should "make sure [he was] bloody" and that she had stated to Baker that Moulson was abusive to her. Rajewski simply replied, "ok." The defendant then texted that Rajewski should wait outside because the police were coming to his residence and that he should delete this text conversation. Next, the defendant asked Rajewski to tell the police that Moulson had "stalked" her, that Rajewski should claim to have been involved in an altercation at a bar, had been bleeding when he arrived at Bunny Drive, and had followed her to Bunny Drive only because he loved the defendant. Finally, the defendant texted Rajewski that they needed "to stick with the same story" and that their statements needed "to match."

Rajewski replied that he was going to tell the truth, specifically, that Moulson had "tried to kick [his] ass, so [Rajewski] beat him up." Rajewski's text messages conveyed that he was upset, and that "enough is enough." The defendant responded with a question mark, and then that his story needed to match hers. After additional conversation via text message, Rajewski again stated that "he was not going to tell a story, he's just going to tell what happened."

Our analysis begins with *State* v. *Williams*, 205 Conn. 456, 459, 534 A.2d 230 (1987), where our Supreme Court considered claims that § 53a-167a was unconstitutionally vague and fatally overbroad. In that case, two police officers detained the defendant during the early morning hours because he matched the description of a burglar. Id., 457–59. One of the officers asked the defendant to wait inside a police vehicle. Id., 458. "The defendant refused to comply with [the] request. Increasingly 'out of control,' he started to swear at the police officers and, in a crescendo, to protest his detention. Observing

that the noise had attracted onlookers, the [officers] decided that the defendant was causing a disturbance and arrested him for breach of the peace. Following standard police procedures, they attempted to handcuff the defendant but he had become 'totally out of control' and had to be forcibly 'subdued.' " Id. As a result of his resisting arrest, the defendant was convicted for violating § 53a-167a (a). Id., 459.

Our Supreme Court rejected the defendant's claim of insufficient evidence as to his conviction for violating § 53a-167a. Id., 468–69. Next, it considered his claim that § 53a-167a was unconstitutionally vague and violated due process of law. Id., 469. In rejecting this claim, the court explained that this statute was confined "to conduct that amounts to meddling in or hampering the activities of the police in the performance of their duties. . . . Furthermore, the conduct that the statute proscribes is limited to action intended to obstruct the police in the performance of their duties." (Citations omitted.) Id., 471. The court also recognized that certain acts of "verbal resistance" fell within the ambit of § 53a-167a. Id. "The statute's requirement of intent limits its application to verbal conduct intended to interfere with a police officer and excludes situations in which a defendant merely questions a police officer's authority or protests his or her action." Id., 472.

The court then turned to the defendant's claim that § 53a-167a was fatally overbroad. Id., 472–74. First, it distinguished § 53a-167a from a Texas ordinance that the United States Supreme Court had determined to be overbroad. Id., 472–73. It then stated: "Moreover, unlike the United States Supreme Court, this court has the power to construe state statutes narrowly to comport with the constitutional right of free speech. . . . *To avoid the risk of constitutional infirmity, we construe § 53a-167a to proscribe only physical conduct and fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace.* . . . By its terms, § 53a-167a is directed only at conduct that interferes with police and firemen in the performance of their duties. As we have said earlier, it encompasses only interference that is intentional. . . . This limiting construction, which we deem to be fully consistent with the intent of the legislature, preserves the statute's purpose to proscribe core criminal conduct that is not constitutionally protected." (Citations omitted; emphasis added; footnotes omitted; internal quotation marks omitted.) Id., 473–74.

Approximately twenty-seven years later, in *State* v. *Sabato*, supra, 152 Conn. App. 590, 595 n.3, this court, sua sponte, raised the issue of whether § 53a-167a was limited to physical conduct and fighting words. In that case, the victim's cell phone was stolen from a nightclub. Id., 592. The next day, the defendant sold this cell phone to a third party, who sought assistance in

unlocking it. Id. The victim used a tracking application on her computer to locate her phone and then notified the police. Id. The third party, later relinquishing the phone, provided the police with a sworn statement, and notified the defendant that he was at the police station. Id., 592–93. The defendant sent the third party a text message "telling him not to write a statement and to keep his mouth shut." (Internal quotation marks omitted.) Id., 593. The state subsequently charged the defendant with attempt to interfere with a police officer. Id., 594. Following his conviction, the defendant filed an appeal. Id.

The defendant in *Sabato* claimed that the evidence was insufficient to sustain his conviction for attempt to interfere with a police officer. "First, he argues that § 53a-167a does not proscribe physical or verbal conduct directed against a third party . . . . Second, he contends that applying § 53a-167a to his conduct, which was outside the presence of a police officer, would render the statute void for vagueness." Id., 595. After oral argument, we ordered the parties to submit supplemental briefs on the applicability of *State* v. *Williams*, supra, 205 Conn. 456. *State* v. *Sabato*, supra, 152 Conn. App. 595 n.3.

We concluded that *State* v. *Williams*, supra, 205 Conn. 456, controlled the appeal. *State* v. *Sabato*, supra, 152 Conn. App. 595. "Applying *Williams* to the present case, we conclude that there was insufficient evidence to convict the defendant of attempt to interfere with an officer." Id., 596. "By long form information, the defendant was charged under § 53a-167a exclusively for a text message he sent to [the third party] . . . telling him not to write a statement and to 'keep [his] mouth shut.' These words cannot be construed to be 'fighting words that by their very utterance inflict injury or tend to incite an immediate breach of the peace.' *State* v. *Williams*, supra, [473]. They were therefore not proscribed by § 53a-167a. As a result, we conclude that there was insufficient evidence presented to sustain the defendant's conviction for attempt to interfere with an officer." *State* v. *Sabato*, supra, 152 Conn. App. 596.

Our Supreme Court granted the petitions for certification filed by the state and the defendant. *State* v. *Sabato*, 321 Conn. 729, 732–33, 138 A.3d 895 (2016). The state argued that this court erred in concluding that § 53a-167a excluded true threats or, alternatively, that the judicial gloss applied to that statute should include true threats.[5] Id., 740. The defendant countered that the state was attempting to save the conviction on the basis of a theory of guilt that had not been alleged or presented to the jury, and, therefore, constituted a violation of due process. Id., 740–41.

The court reviewed its prior interpretation of § 53a-167a in *State* v. *Williams*, supra, 205 Conn. 456, noting first that the statute encompassed both verbal and phys-

ical conduct, subject to the intent requirement. *State v. Sabato*, supra, 321 Conn. 741. It iterated the limiting construction that had been placed on the statute; namely, that § 53a-167a proscribed "*only physical conduct and fighting words* that by their very utterance inflict injury or tend to incite an immediate breach of the peace." (Emphasis added; internal quotation marks omitted.) Id., 741.

The court in *Sabato* rejected the state's true threats argument on the basis that it violated the theory of the case, and thus, due process. Id., 742–45. In its analysis, the court expressly noted that the prosecutor had contended that the defendant's statement to the third party to refrain from providing a statement to the police comprised the actus reus of the offense. Id., 745. "*As we have explained, however, and as the state concedes, § 53a-167a does not proscribe such verbal conduct, and, therefore, the defendant's conviction under that statute cannot stand.*" (Emphasis added.) Id., 746.

The state attempts to distinguish the present case from the *Sabato* opinions and *State* v. *Williams*, supra, 205 Conn. 456. With respect to the latter, the state contends that the court in *Williams* "was careful not to preclude application of § 53a-167a to 'verbal conduct intended to interfere with a police officer' because such 'core criminal conduct' is not constitutionally protected speech, and, thus, falls within the ambit of § 53a-167a." In support, the state directs us to the following footnote from *Williams*: "This narrow construction [that § 53a-167a applies only to physical conduct and fighting words] is required by the constitutional right of free speech even though a broader construction of verbal conduct intended to interfere with a police officer to which we referred in our earlier discussion of vagueness would constitutionally suffice for the latter purpose." (Internal quotation marks omitted.) *State* v. *Williams*, supra, 205 Conn. 473 n.6. As to the former, the state maintains that, contrary to the present case, it had failed to present evidence of specific intent to interfere in the *Sabato* prosecution.

We are not persuaded by the state's interpretation of *State* v. *Williams*, supra, 205 Conn. 456. In that case, our Supreme Court determined that, for purposes of the defendant's claim that § 53a-167a was unconstitutionally vague, verbal conduct, coupled with the intent requirement, sufficiently defined the statute and provided notice as to what was proscribed, and thus did not violate due process. Id., 469–72. In order to ensure that the state did not run afoul of the constitutional right to free speech, however, our Supreme Court expressly limited its application to intentional interference consisting of either physical conduct or fighting words that inflicted injury or tended to incite an immediate breach of peace. Id., 473. "This limiting construction, which we deem to be fully consistent with the intent of the

legislature, preserves the statute's purpose to proscribe core criminal conduct that is not constitutionally protected." (Internal quotation marks omitted.) Id., 474. Additionally, our Supreme Court recently endorsed this limitation. In *State* v. *Sabato*, supra, 321 Conn. 746, it explicitly emphasized that "§ 53a-167a does not proscribe such verbal conduct [that does not constitute fighting words] . . . ."

Additionally, we are not persuaded by the state's attempt to distinguish the present case from the *Sabato* decisions. Neither this court nor our Supreme Court based its decision on whether there was evidence that the defendant specifically intended to interfere with a police officer when he sent his text message to the third party. Rather, the focus of both courts was on the fact that the verbal conduct did not amount to fighting words and could not constitute a violation of § 53a-167a.

The state also directs us to *State* v. *Williams*, 110 Conn. App. 778, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008). In that case, a Norwalk police sergeant effectuated a motor vehicle stop after observing a vehicle in a commercial parking lot at 2 a.m. Id., 780. All three men in the vehicle, including the defendant who was sitting in the back seat, appeared nervous and fidgety. Id., 781. The sergeant arrested the three men for trespassing, and the police found cocaine and marijuana in the vehicle. Id., 781–82. At the scene of the arrest, and later at the police station, the defendant identified himself to the police officers as "Zeke Williams." Id., 782. At the station, he provided the police with his correct social security number, address and birthplace. Id. Using an electronic database, the police determined the defendant's "actual identity to be Corey Williams, not Zeke Williams." Id. He subsequently was convicted of possession of narcotics with intent to sell and interfering with an officer. Id., 783.

On appeal, the defendant claimed, inter alia, that the evidence was insufficient to support his conviction for violating § 53a-167a (a). Id., 793. Relying on our Supreme Court's decision in *State* v. *Aloi*, 280 Conn. 824, 911 A.2d 1086 (2007),[6] we affirmed the defendant's conviction. Id., 793–98. We specifically reasoned that "[t]he defendant's providing a false name to police is verbal conduct that is equivalent to the defendant's refusal to give identification to the police in *Aloi*, in that it hampered, or hindered, the ability of the police to perform their duties properly, quickly and efficiently." Id., 797. Accordingly, we concluded that the defendant's sufficiency claim failed. Id., 798.

At first blush, *State* v. *Williams*, supra, 110 Conn. App. 778, appears to support the state's claim that verbal conduct specifically intended to interfere with a police officer constitutes a violation of § 53a-167a. Our opinion, however, did not specifically address the question of whether the verbal conduct of the defendant consti-

tuted a violation of § 53a-167a. Id., 793–98. Furthermore, a review of the briefs filed in that case reveals that the defendant argued that the testimony of one officer should have been discounted, the defendant provided his proper social security number and address to the police, the defendant followed the commands of the arresting sergeant and never resisted or became uncooperative. *State* v. *Williams*, Conn. Appellate Court Record & Briefs, May-June Term, 2008, Defendant's Brief pp.13–15. In other words, the defendant in *State* v. *Williams*, supra, 110 Conn. App. 778, did not challenge his conviction under § 53a-167a on the basis that it was premised on verbal conduct. The issue addressed in *State* v. *Williams*, supra, 205 Conn. 456, and subsequently endorsed in *State* v. *Sabato*, supra, 321 Conn. 729, was not before this court and not part of the opinion in *State* v. *Williams*, supra, 110 Conn. App. 778. We conclude, therefore, that our decision in *State* v. *Williams*, supra,110 Conn. App. 778, is inapplicable to the present case.

The sole basis for the defendant's conviction for violating § 53a-167a was the text messages sent to Rajewski. These words, which cannot be construed as fighting words, were not proscribed by that statute. As a result, we conclude that there was insufficient evidence to sustain her conviction for interfering with a police officer.

II

The defendant next claims that the evidence was insufficient to support her conviction of tampering with a witness. Specifically, she argues that the state failed to prove that she sent the text messages to Rajewski[7] with the specific intent required for a conviction of § 53a-151 (a), that is, the intent to influence a witness at an official proceeding. See *State* v. *Ortiz*, 312 Conn. 551, 554, 93 A.3d 1128 (2014). We are not persuaded.

Section 53a-151 (a) provides: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding."[8] See also *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 52–53, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004). Its purpose is to punish those who interfere with our system of justice. *State* v. *Pommer*, 110 Conn. App. 608, 617, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008).

Our Supreme Court has stated that this statutory language "plainly warns potential perpetrators that the statute applies to any conduct that is intended to prompt a witness to testify falsely or to refrain from testifying in an official proceeding that the perpetrator believes to be pending or imminent." *State* v. *Cavallo*, 200 Conn.

664, 668, 513 A.2d 646 (1986). It further explained that § 53a-151 (a) "applies only to conduct intentionally undertaken to undermine the veracity of the testimony given by a witness." Id., 672; see also *State* v. *Coleman*, 83 Conn. App. 672, 678–79, 851 A.2d 329, cert. denied, 271 Conn. 910, 859 A.2d 571 (2004), cert. denied, 544 U.S. 1050, 125 S. Ct. 2290, 161 L. Ed. 2d 1091 (2005). We are mindful that "[i]ntent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Bennett-Gibson*, supra, 84 Conn. App. 53.

Before addressing the specific arguments in this case, it is helpful to review our Supreme Court's decision in *State* v. *Ortiz*, supra, 312 Conn. 551, which both parties have discussed in their respective briefs. In that case, the defendant admitted to Louis Labbadia that he had committed a burglary in the town of Haddam. Id., 554–55. That same day, Labbadia provided this information to the police. Id., 555. Approximately fifteen months later, the defendant went to the home of Robin Bonita, Labbadia's fiancée. Id. Bonita, who lived in Middletown, informed the defendant that Labbadia had gone to the police. Id. Shortly thereafter, Labbadia went missing, and his remains subsequently were discovered approximately eight months later in Middletown. Id.

The police considered the defendant as a suspect in the death of Labbadia, and went to speak with the defendant's girlfriend, Kristen Quinn. Id., 554–55. At this time, Quinn did not provide the police with any useful information for the investigation. Id., 555. She did, however, inform the defendant that she had been in contact with the police, and did not want to be involved with him because she suspected his involvement in Labbadia's death. Id.

One week later, the defendant, intoxicated and suicidal, told Middletown police officers that he "was tired of being accused of . . . something that he [did not] do." (Internal quotation marks omitted.) Id., 555. Thereafter, the defendant went to Quinn's home and confessed to killing Labbadia with a hunting knife following his conversation with Bonita. Id., 557. Quinn then provided this information to the police. Id.

Approximately seven weeks later, the defendant returned to Quinn's home, this time in possession of a small handgun. Id. "The defendant told Quinn that he had the gun for 'insurance' if she told 'the cops about what he said about [Labbadia].' The defendant said that

if Quinn spoke to the police '[her] house was going to go up in smoke . . . .' The defendant stated that he knew where Quinn's grandparents lived. The defendant told Quinn that he was going to 'put [her down] on [her] knees, put the gun to [her] head and scare [her] straight.' " Id.

The defendant in *Ortiz* subsequently was found guilty, inter alia, of tampering with a witness. Id., 558. We affirmed his conviction, and our Supreme Court granted his petition for certification. Id. It interpreted § 53a-151 (a) and concluded that "a jury may consider a defendant's attempt to induce a potential witness to lie to police investigators as evidence of his intent to affect that witness' conduct at a future official proceeding." Id., 563. It stated expressly that "§ 53a-151 (a) applies whenever the *defendant* believes that an official proceeding will probably occur, even if the police are only at the investigation stage." (Emphasis in the original.) Id., 568–69. It also explained that the statutory phrase "about to be instituted" signified probability and not temporal proximity. Id., 569. It also provided the following example: "[W]hen an individual knows that there is significant evidence connecting him to the crime, or, even further, when the individual knows that a witness with relevant information already has spoken with the police, a jury reasonably could infer that the individual believed that the investigation probably would progress into an official proceeding." Id., 570–71.

Next, the court in *Ortiz* considered the defendant's sufficiency claim. Id., 572–74. It noted that the defendant had confessed to two people that he had killed someone, one of those individuals had been in contact with the police, and the defendant himself, after exhibiting suicidal behavior, spoke with police officers, including the investigator working on the Labbadia homicide. Id., 572. As a result, the jury had sufficient evidence to find that an official proceeding would be instituted. Id., 572–73. Additionally, based on defendant's threats to Quinn, the jury was free to find that he had intended to induce her to testify falsely or withhold testimony at an official proceeding. Id., 573–74. Accordingly, our Supreme Court concluded that the jury reasonably could have concluded that the evidence established the defendant's guilt as to the charge of tampering with a witness beyond a reasonable doubt. Id.

In the present case, the defendant challenges only the requirement that the state prove that she sent text messages to Rajewski with the intent to induce him to testify falsely. Specifically, she contends that it was too speculative for the jury to infer that she possessed the required intent to induce Rajewski to lie or withhold testimony at a future official proceeding at the time she texted him. She also argues that it would have been speculation for the jury to find that Rajewski would in fact testify when a future official proceeding could be

resolved via a nolle prosequi, diversionary program or guilty plea. In other words, it simply was not probable that a "criminal court proceeding" would occur in which Rajewski would testify. Finally, she maintains that, at most, the jury could infer that she had attempted to prevent his arrest.

The defendant's argument suffers from two flaws. First, she incorrectly assumes that the future official proceeding was limited to Rajewski's criminal trial. She offers no support for this interpretation of § 53a-151 (a). In *State* v. *Pommer*, supra, 110 Conn. App. 614, we stated: "An official proceeding includes *any proceeding held or that may be held before any judicial official authorized to take evidence under oath.*" (Emphasis added.) Thus, the official proceeding was not limited to a prosecution of Rajewski, but included a prosecution of Babcock, Moulson, or the defendant. Accordingly, we disagree with the defendant's interpretation of the "official proceeding" language contained in § 53a-151 (a).

Second, and more importantly, we disagree that the evidence in the present case was insufficient to support a finding that "an official proceeding was pending, or about to be instituted . . . ." Our precedent contradicts the defendant's argument. In *State* v. *Foreshaw*, 214 Conn. 540, 541, 572 A.2d 1006 (1990), the defendant was charged with murder, carrying a pistol without a permit and tampering with physical evidence. In that case, the defendant exchanged words with a third party near a convenience store. Id., 542. The victim admonished the defendant for her "vile language." Id. After disappearing briefly behind a nearby building, the defendant returned, shot and killed the victim. Id., 543. The defendant immediately fled in her vehicle, throwing the gun out of the window prior to her apprehension. Id.

The state charged the defendant, inter alia, with a violation of General Statutes (Rev. to 1989) § 53a-155 (a), which provides in relevant part: "A person is guilty of tampering with . . . physical evidence if, believing that an official *proceeding is pending, or about to be instituted,* he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding." (Emphasis in original.) *State* v. *Foreshaw*, supra, 214 Conn. 547.[9]

On appeal in *Foreshaw*, the defendant claimed that the state had failed to present sufficient evidence to support her conviction. Id., 549–51. "In particular, the defendant argues that because she discarded the gun prior to any contact with law enforcement officers or the judicial system, she could not have believed an official proceeding was 'about to be instituted.'" Id., 550. Our Supreme Court disagreed, stating: "It is true that at the time the defendant discarded the gun, no official proceeding had in fact been instituted. The statute, however, speaks to that which is readily apt to

come into existence or be contemplated and thus plainly apples to the official proceeding arising out such incident. The crucial role police involvement would play in that process cannot be disputed." Id., 551.

In the present case, the jury reasonably could have found that the defendant tampered with Rajewski by sending him text messages shortly after his altercation with Moulson. The timing of this tampering is similar to the facts of *State* v. *Foreshaw*, supra, 214 Conn. 543, where the defendant tampered with the evidence by throwing the gun out of the car window while fleeing from the crime scene. Additionally, the text messages from the defendant encouraged Rajewski to lie to Baker. See *State* v. *Ortiz*, supra, 312 Conn. 563; id., 571–72 (jury may consider defendant's attempt to induce potential witness to lie to police investigators as intent to affect that witness' conduct at future official proceeding); see also, e.g., *State* v. *Higgins*, 74 Conn. App. 473, 484, 811 A.2d 765 (state may establish second prong of tampering statute by proving defendant urged another to testify falsely), cert. denied, 262 Conn. 950, 817 A.2d 110 (2003). The evidence established that the defendant was aware of Baker's investigation of the physical altercation involving Rajewski, Babcock and Moulson. The jury could also find that the defendant, knowing that Baker investigated the physical altercation that had occurred at Bunny Road and had learned the identity of the participants, including Rajewski, believed than an official proceeding probably would result therefrom. See *State* v. *Ortiz*, supra, 572–73; *State* v. *Pommer*, supra, 110 Conn. App. 619–20. Furthermore, these cases do not support the defendant's argument that we must consider the possibility that a future official proceeding ultimately may be resolved by means of a nolle prosequi, diversionary program or a guilty plea, obviating the need for Rajewski's testimony. Instead, our focus remains on whether a future official proceeding, i.e. a criminal trial, is probable. For these reasons, we conclude that the defendant's insufficiency claim with respect to her conviction of tampering with a witness must fail.[10]

The judgment is reversed only with respect to the defendant's conviction of interfering with an officer and the case is remanded with direction to render a judgment of acquittal on that charge and to resentence the defendant on the conviction of tampering with a witness. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] We note that this case is replete with conflicting testimony regarding the timing and nature of the relationships between the various parties, as well as the events of the night of July 24, 2015, and the early morning of July 25, 2015. It was for the jury, and not this court, to resolve discrepancies in the testimony. We emphasize that "we must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. . . . [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to

weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Colon*, 117 Conn. App. 150, 154, 978 A.2d 99 (2009).

[2] In July, 2015, the defendant and Moulson lived together, but no longer were involved romantically.

[3] To the extent that the defendant claims the evidence was insufficient to sustain her conviction of § 53a-167 (a) because she sent the text message to a third party, Rajewski, and not the state trooper, Baker, we conclude that she abandoned such a contention as a result of an inadequate brief. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Fowler*, 178 Conn. App. 332, 345, 175 A.3d 76 (2017), cert. denied, 327 Conn. 999, 176 A.3d 556 (2018). Other than a passing reference to the fact that her communication was directed at Rajewski, the defendant failed to provide any argument or analysis. Accordingly, we decline to consider this argument. See *State* v. *Navarro*, 172 Conn. App. 496, 500–501 n.1, 160 A.3d 444, cert. denied, 326 Conn. 910, 164 A.3d 681 (2017).

[4] Neither Rajewski's cell phone nor the police report was admitted into evidence. Instead, the prosecutor used the police report to refresh Baker's recollection as to the text message conversation between the defendant and Rajewski.

[5] Ultimately, our Supreme Court declined to reach these issues. *State* v. *Sabato*, supra, 321 Conn. 734 n.7.

[6] In *State* v. *Aloi*, supra, 280 Conn. 833–35, our Supreme Court concluded that the refusal to comply with a police command to provide identification during a *Terry* stop was not categorically excluded from the broad language of § 53a-167a. Such a refusal, though done peacefully, was likely to impede or delay the police investigation. Id., 834. It also noted that it would have been impractical, if not impossible, to draft a statute that detailed with precision "exactly what *obstructive conduct* is proscribed." (Emphasis added.) Id., 837. Finally, it determined, under the facts and circumstances of that case, that the evidence was sufficient to support the defendant's conviction for violating § 53a-167a. Id., 841–44; see also *State* v. *Silva*, 285 Conn. 447, 456–61, 939 A.2d 581 (2008) (evidence sufficient to support conviction for violating § 53a-167a where defendant, about to receive infraction ticket, refused to provide police with driver's license, registration and insurance information and for fleeing the scene to avoid infraction ticket). Contrary to the present case, which involved verbal communications to Rajewski, the defendants in *Aloi* and *Silva* engaged in obstructive conduct by refusing to provide information sought by the police.

[7] We note that the court instructed the jury that the tampering of a witness count applied either to Rajewski or Babcock. The defendant did not object to the court's charge. On appeal, the defendant claims that her right to due process was violated because the state's information did not charge her with tampering with Babcock. She further claims that the evidence was insufficient to sustain her conviction for violating § 53a-151 (a) with respect to Babcock. In its brief, the state expressly conceded that it had not pursued a charge of tampering with a witness as to Babcock. With respect to the defendant's due process claim, the state argued that it failed under the third prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 813 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Specifically, the state claims that it "never proceeded on any theory of the case alleging that the defendant had tampered with Babcock, and presented no evidence from which the jury could have found the defendant guilty under that theory of culpability. Consequently, the defendant's due process claim lacks a factual predicate, and must fail." We agree that, despite the court's instructions, the state presented its case of tampering with a witness solely as to Rajewski, and that the defendant cannot demonstrate a violation of her right to due process under these facts and circumstances.

[8] "The term witness is broadly defined as any person summoned, *or who may be summoned*, to give testimony in an official proceeding . . . . General Statutes § 53a-146 (6). The statutory scheme also includes a broad definition of official proceeding, that is, any proceeding held *or which may be held* before any legislative, judicial, administrative, or other agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner, or notary or other person taking evidence in connection with any proceeding. . . . General Statutes § 53a-146 (1)."

(Emphasis in original; internal quotation marks omitted.) *State* v. *Ortiz*, supra, 312 Conn. 562 n.6.

[9] In *State* v. *Pommer*, supra, 110 Conn. App. 617, we adopted and applied our Supreme Court's construction of the "official proceeding is pending, or about to be instituted" language in § 53a-155 (a) from *State* v. *Foreshaw*, supra, 214 Conn. 540, to the identical language in § 53a-151 (a).

[10] On remand, the court must resentence the defendant as to this conviction. See *State* v. *Wade*, 297 Conn. 262, 268, 998 A.2d 1114 (2010); *State* v. *Crenshaw*, 172 Conn. App. 526, 530, 161 A.3d 638, cert. denied, 326 Conn. 911, 165 A.3d 1252 (2017).

---